THE DROVERS' LIVE-STOCK COMMISSION COMPANY V.
THE CHARLES WOLFF PACKING COMPANY.

No. 14,714.   (86 Pac. 128.)

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Issue Not Pleaded but Acquiesced In.* Where with the acquiescence of the litigants a case is tried upon the assumption that a certain question of fact is involved, an inquiry in a reviewing court into errors assigned with regard to such question cannot be avoided by the prevailing party merely by a showing that it was not within the issues raised by the pleadings.

2. GUARANTY—*Delay in Giving Notice of Intention to Repudiate the Contract—Estoppel.* Where a packing company purchases and uses a part of a herd of mortgaged cattle without payment therefor reaching the mortgagee, and upon a demand for an accounting, being given the privilege of handling and marketing the remainder of the cattle, guarantees the payment of any deficiency in the mortgage debt, and the company upon being sued on the guaranty defends upon the ground that it had been induced to make it by a false representation of the number of cattle on hand and had rightfully repudiated it, a showing that for thirty-nine days after discovering the real facts the company failed to notify the mortgagee of its purpose to deny liability is fatal to such defense, where no excuse is shown for such delay and where during that period the cattle are disposed of by a trustee in bankruptcy of the mortgagor.

3. ——— *Defense of Fraud—Duty of Guarantor.* In such a case, in order for the packing company to avail itself of such defense, it must either offer to pay the mortgagee for the cattle it had used prior to the execution of the contract of guaranty or show grounds relieving it from liability on that account.

Error from Shawnee district court; ALSTON W. DANA, judge.   First opinion filed July 6, 1906.   Reversed.   Rehearing allowed October 6, 1906.   Second opinion filed March 9, 1907.   First opinion affirmed.

*Loomis, Blair & Scandrett,* for plaintiff in error; *Grant I. Rosenzweig,* of counsel.

*G. C. Clemens,* and *Hazen & Gaw,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: In March, 1900, Peter O'Connor, Mahlon Patterson and I. Patterson executed to the Drovers' Live-stock Commission Company a mortgage upon a number of head of cattle to secure their note for $11,-293.40. Later in the year the mortgagors sold a number of the cattle to the Charles Wolff Packing Company, receiving the proceeds thereof, a part of which they turned over to the mortgagee and the remainder of which, amounting according to the only evidence on the subject to $2073.14, they retained. The commission company, upon learning of this fact, on January 11, 1901, wrote to the packing company saying in substance that it was doubtful of its security and that unless otherwise protected it would at once sell the remaining cattle and look to the packing company for any deficiency if the property should fail to satisfy the debt, adding that it expected a shortage of about $1000. Negotiations were then entered into which culminated in a written contract between the two companies, reading as follows:

"This agreement made and entered into this 14th day of January, 1901, by and between the Charles Wolff Packing Company, a corporation, of the city of Topeka, Kan., party of the first part, and the Drovers' Live-stock Commission Company, a corporation, of Kansas City, Mo., party of the second part:

"Witnesseth, that whereas the party of the second part is the owner and holder of certain notes and chattel mortgages, said chattel mortgages being recorded in Pottawatomie and Wabaunsee counties, Kansas, and said cattle being now in Wabaunsee county, Kansas, to secure the same, made by Patterson & O'Connor, by M. Patterson, to the party of the second part, on about six hundred and eighty-three head of cattle, on which there is a balance of five thousand seven hundred and eighty-two dollars and eighty-eight cents ($5782.88) due at this time; and,

"Whereas, the Charles Wolff Packing Company has heretofore bought a portion of the cattle described in said mortgages from Patterson & O'Connor, and it be-

ing doubtful whether the remainder of said cattle is sufficient to fully pay the balance due on said notes and mortgages;

"Now, therefore, in consideration of the forbearance of the foreclosure of said notes and mortgages for the period of one hundred and twenty days from this date, and the settlement and adjustment of all matters existing between said parties to this contract, the said Charles Wolff Packing Company hereby guarantees the full payment of said balance of five thousand seven hundred and eighty-two dollars and eight-eight cents ($5782.88), with interest at eight per cent. from this date, to the said party of the second part.

"It being the understanding and agreement between said parties that the Charles Wolff Packing Company is to have the right to cause said cattle to be full fed and to then purchase the same itself or cause the same to be sold in the market and apply the proceeds of said sale to the payment and discharge of the aforesaid balance of indebtedness as the same are sold as aforesaid; and upon payment of the said sum of $5782.88 and interest to the party of the second part by said first party, said notes and mortgages shall be assigned to and become the property of the party of the first part."

Shortly after this agreement was entered into the packing company took possession of the cattle. It exercised control over them for several weeks, during which time it made sales from them to the amount of $2342.66, which was applied to the mortgage debt. On February 25, 1901, the Pattersons filed a petition in bankruptcy. The trustee in bankruptcy sold the remaining cattle and paid the proceeds ($1580.70) to the commission company. The commission company then sued the packing company upon its guaranty for the balance due upon the mortgage debt—$1968.70. The packing company defended upon the ground that it had been induced to give the guaranty by false representations made by the commission company as to the number of mortgaged cattle and the quantity of feed the Pattersons had, and that upon learning the true facts in the case it had repudiated the contract and given notice to that effect. A jury trial resulted in a

verdict for the defendant, upon which a judgment was rendered, from which the plaintiff prosecutes error.

The plaintiff in error insists that the judgment cannot stand for the reason that, even admitting that a situation had once existed which would have authorized the defendant to rescind the contract of guaranty, it had lost the right to do so by failing to assert it in a proper manner and by timely action—especially in this, that it had omitted to disavow liability promptly upon the discovery of the alleged fraud. The defendant in error maintains, however, that this question is not in the case, because not raised by the pleadings; that in order to avail itself of this contention the plaintiff was required to plead ratification; that this was not done, and therefore no issue was joined on that subject. It is true that the plaintiff did not affirmatively and expressly plead ratification, waiver or laches. But the defendant in its answer alleged that upon the discovery of the fraud it "immediately refused to have anything more to do with said contract and repudiated and rescinded it and so notified said plaintiff." The reply was a general denial. Whether under these pleadings the plaintiff was entitled to invoke the doctrine of equitable estoppel against the defendant need not be determined. The case was tried throughout and submitted to the jury upon the assumption that this matter was one of the vital issues; this not only without objection by the defendant, but with its positive approval, for it asked several instructions on the subject, some of which were given by the court. Under these circumstances this court cannot undertake to examine the pleadings for the purpose of deciding whether they formally presented the issue of ratification. A similar situation gave occasion for a similar holding in *Edwards v. Sourbeer*, 73 Kan. 224, 84 Pac. 1033.

The jury specially found these facts, among others: The packing company took possession of the cattle January 16 or 17, 1901; within a few days it learned just how much feed was on hand and was therefore ad-

vised of any misrepresentation that had been made to it in that regard; by January 19 it also learned that the fifty-nine head of cattle, upon the absence of which it chiefly relied to avoid the contract, were not with the rest of the herd and had not been brought to light elsewhere; on January 26 it wrote to the commission company calling attention to the shortage of cattle, but not mentioning the feed, and asking what that company knew about the matter and how such a mistake could have happened; on January 28 the commission company answered thus: "We know nothing about the count of the cattle referred to, but yourselves and Mr. Wolff talked this matter over with Mr. Patterson and we had nothing to do with it. We do not believe Mr. Patterson can be short any cattle but assume no liability on account thereof"; the packing company made seven shipments of cattle, the first on January 24 and the last on February 18, the sales amounting to $2342.66; up to February 22 or 23 it entertained hopes that the missing cattle would yet be discovered, but at that time it became fully satisfied that the Pattersons did not have them, and thereupon it abandoned possession of the cattle remaining on hand; on February 25 the Pattersons filed petitions in bankruptcy, and their trustee shortly afterward took charge of the cattle, which they later sold for $1580.70, paying the proceeds to the commission company; on April 3 the packing company wrote to the commission company that it did not consider itself bound by the contract of guaranty and would pay nothing on account of it unless compelled to do so by the judgment of a court.

It is strongly urged in behalf of the commission company that the conduct of the packing company in retaining control of the cattle, and especially in continuing to market them for so long a time after it had discovered the shortage, both in respect to the feed and the live stock, and after it had been notified that the commission company disclaimed all responsibility in the matter, absolutely cut off defendant from any right

it might otherwise have had to repudiate the contract. This argument has much real force as well as obvious plausibility. Possibly, however, the lingering hope which the jury found that the packing company entertained until February 22 or 23 that the missing fifty-nine head of cattle might yet be discovered may be considered a sufficient excuse for its continuing to recognize the contract until that time. But when it became fully satisfied that these cattle did not exist, and determined on that account to disavow the contract, a duty devolved upon it to do something more than merely passively to cease giving it affirmative recognition. It was charged with the further obligation to advise the commission company with reasonable promptness of its decision. Instead of performing that obligation, so far at least as the special findings declare or the evidence discloses, it remained silent from February 23 to April 3.

How much delay can be tolerated in giving notice of an election of a course to be pursued under analogous circumstances may ordinarily be a question of fact to be determined by a jury. Here the long period of inaction—thirty-nine days—is important, but not necessarily controlling. The vital consideration is that during this interval all the remainder of the mortgaged cattle were disposed of by the trustee in bankruptcy. One reason for requiring the packing company to give early information to the commission company that it had concluded to deny liability under the contract is that the latter company should have had the opportunity, with the knowledge of that fact, to determine what course it would pursue with regard to the disposition of the cattle. It does not appear even that it knew the packing company had abandoned control of them. But even if it did, that fact was of no concern to it so long as it understood that its right was not denied to look to the guarantor for any part of the mortgage debt that should not be satisfied from the proceeds of the property. If it had been given timely notice of

the repudiation it might have preferred to manage the cattle itself in its own way. Whether it could have made them bring larger returns is wholly beside the purpose. It was entitled to make the attempt if it saw fit, and to know the attitude of the packing company before making up its mind as to its own course. The packing company, by delaying to give notice of its conclusion to disavow responsibility until such notice was rendered wholly unavailing for one of the most important purposes it was adapted to serve, there being nothing whatever to excuse such neglect, was barred from any right it might otherwise have had to rescind the contract.

If it could be said that the special findings showed affirmatively that no notice of the attempted repudiation was given until April 3 a judgment for the plaintiff would have to be ordered. They do not do so in terms, although it is questionable whether they may not fairly be said to do so by inference. Another trial may develop a different state of facts. A judgment will not be ordered, but because there was no evidence of any notice given prior to April 3 of an intention to set aside the contract, or of any facts excusing such omission, a new trial will be granted.

Another consideration forbids the judgment to stand. So far as the record shows, at the time the contract of guaranty was executed the packing company stood definitely charged with a debt to the commission company of about $2000. It had confessedly used cattle of that value upon which the commission company held a duly recorded mortgage, without accounting to the mortgagee in any way. A suggestion was made in the course of the trial of a claim by the packing company that the prior dealings between the parties had been such as to alter the *prima facie* aspect of the case and provide it with a defense against a demand for the value of the cattle, but there was no testimony whatever offered in support of such a claim. There is nothing to indicate, at least from the standpoint of the packing com-

pany, that the cattle did not bring all that they were worth, and they fell short of satisfying the debt by approximately $2000; therefore its contingent liability to make up whatever indebtedness should remain after their sale, up to $2000, was practically a fixed obligation of that amount. All the loss it suffered by reason of the contract was the expense it incurred in caring for the cattle for a little over a month. This expenditure was presumably compensated in whole or in part by the increased value it gave the cattle and the consequently increased proceeds from their sale. At all events it could not have amounted to a sufficient offset for the preexisting obligation. The packing company therefore profited by the contract to the extent of being relieved from a fixed liability of substantially $2000. The effect of the judgment was to release the defendant from paying for $2000 worth of the plaintiff's property which it had obtained without compensation —practically to take $2000 from the plaintiff and give it to the defendant.

That the defendant had paid full value to the mortgagors—had been defrauded out of the amount by them—does not affect its relations to the plaintiff. The defendant, in order to rescind the contract, was required to restore what it had taken under it—to reestablish the former status of the parties. It could not retain the benefits and reject the burdens. Unless it claimed the existence of facts which relieved it from liability for having used the mortgagee's cattle it was bound to tender payment of their value. If it did make that claim it was equally bound to show that it was well founded. If the plaintiff was not entitled to recover on the written contract it was entitled to be reinstated in the right it had surrendered by reason thereof—the right to call the defendant to account for the loss it had already suffered by the misappropriation of the cattle which it owned as mortgagee. The defendant failed to make any provision for the protec-

22—74 KAN.

tion of this right; it did not offer to pay the plaintiff in whole or in part for the cattle it had purchased of the mortgagor, or to have its liability in this regard examined or adjusted; for this reason it was not entitled to a judgment upholding its repudiation of the contract of guaranty.

These conclusions seem so plainly to accord with the principles of equity that it is not thought necessary to cite authorities. Cases more or less in point may be found in 14 A. & E. Encycl. of L. 159, 161, 24 A. & E. Encycl. of L. 620, 645, and 9 Cyc. 435.

The judgment is reversed, and the cause remanded for further proceedings consistent with the views here expressed.

All the Justices concurring.

---

OPINION ON REHEARING.
(89 Pac. 465.)

The opinion of the court was delivered by

MASON, J.: Upon the decision of this case the defendant in error filed a motion for a rehearing, urging among other matters that the opinion showed that the court was mistaken regarding a part of the evidence. A reexamination of the record proved that this contention was correct, and for this reason, and also to give opportunity for the full presentation of a new question that was suggested, a rehearing was granted.

In the statement of facts incorporated in the opinion it was said in effect that the value of the cattle which the packing company had purchased from the mortgagors and for which the mortgagee had not been paid amounted, according to the only evidence on the subject, to $2073.14. The written contract sued upon recited that the packing company had bought a part of the mortgaged cattle, and the jury found specially that it had paid the mortgagors in full therefor, but that the mortgagors had not turned all the proceeds over to the mortgagee. It therefore sufficiently appeared that

at the time the contract of guaranty was executed the plaintiff presumptively had a valid claim against the defendant for some amount in this connection. But the court was in error in believing that this amount could be definitely ascertained from the evidence and that it was practically conceded to be substantially $2000 or any other considerable sum. From the record it cannot be determined readily, if at all, how the parties would have stood upon an accounting at the time the contract was made, and such determination is not necessary to a decision of the case. The third paragraph of the syllabus and the corresponding part of the opinion were based on the misapprehension of fact noted, and are therefore now withdrawn.

The new contention referred to is that the plaintiff should not be allowed to recover on the contract, even conceding that it was not rescinded, because the consideration had failed. Such an issue was presented in the last paragraph of the answer, which set out that the consideration of the contract moving to the defendant was that the plaintiff was to turn over to it the control of 198 head of cattle and a certain quantity of feed; that in fact only 149 head of cattle and a small quantity of feed were turned over; that the value of the property not delivered was greater than the amount of the plaintiff's claim; and that therefore there was such a failure of consideration as to wipe out the demand entirely. The jury found that the plaintiff represented to the defendant that the mortgagors had 198 head of cattle subject to the mortgage, and that there was 12,500 bushels of corn on hand to be used in feeding them, whereas in fact the mortgagors had but 149 head of cattle subject to the mortgage, and there was on hand to be used in feeding them but 100 bushels of corn; that the value of the missing cattle was $1400 and of the missing corn $3720; and that the defendant was induced to enter into the contract by these false representations. The defendant now argues that these findings support the plea of

failure of consideration and require the judgment that was rendered.

The fallacy of this argument lies in the assumption that the allegation of the answer that the plaintiff undertook to turn over certain property to the defendant is sustained by the evidence and findings. The contract, being in writing, speaks for itself as to what was undertaken by the plaintiff. It discloses, not an engagement to deliver any property whatever, but merely a promise to forbear for a stated time to interfere with the mortgaged property and so to give the defendant a chance to make it yield the largest possible returns. Even if it was competent to prove a different agreement, there was no successful attempt to do so. We discover in the record no evidence that the plaintiff agreed to deliver any property to the defendant, and certainly there is no finding to that effect. The special findings therefore do not assert that the defense of failure of consideration was established. The general verdict does not have that effect, because, although the defendant requested an instruction permitting the jury to find for it on the theory that the consideration of the contract had failed in whole or in part, the request was refused. The verdict of course covers no issue other than that submitted, which was whether there had been an effectual rescission of the contract. The judgment rendered is founded on a resolution of that issue in favor of the defendant.

This court remains of the opinion that by its delay to give notice to the plaintiff the defendant was estopped to claim a rescission, and the order of reversal will therefore be adhered to. Whether in any future trial the question of failure of consideration or of the recoupment of damages occasioned by reliance upon fraudulent representations may be investigated is not a matter for present determination.

All the Justices concurring.